Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21 Agreement for Compensation for Disability, approved by the Industrial Commission September 12, 1994, and a Pre-Trial Agreement and at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The plaintiff was an employee of the defendant-employer on August 14, 1992 when she was injured by accident arising out of and in the course of her employment.
3. The carrier on the risk is Travelers Insurance Company.
4. The plaintiff's compensation rate is $297.18.
5. The parties stipulated to the medical records identified in paragraph #11 of the Pre-Trial Agreement.
*******************
Based upon all of the competent evidence of record, the Full Commission ADOPTS IN PART and MODIFIES IN PART the findings of fact of the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. The plaintiff is a 43 year old female. She had worked for the defendant-employer for approximately three and a half years as director of finance.
2. On August 14, 1992 the plaintiff suffered a lumbar strain as she was bending over to pick up a printer off the floor. Prior to that date the plaintiff had injured her lower back in an automobile accident in March, 1989 and in July, 1991 while moving furniture. The July, 1991 injury precipitated a laminectomy at the L5-S1 disc interspace performed by Dr. Ira Hardy II on August 13, 1991.
3. Following her August 14, 1992, back injury, the plaintiff was first seen by Dr. Ira Hardy II, a neurosurgeon, in Greenville, North Carolina. Dr. Hardy determined that she did not have a surgical problem resulting from her injury at work and treated her conservatively. The previous year, the plaintiff had back surgery done by Dr. Hardy from which she had recovered completely.
4. The plaintiff began receiving treatment from her family physician, Dr. Stephen Willis, beginning October 9, 1992. On October 30, 1992 the plaintiff began to complain of vague pain throughout her entire body. This precipitated a diagnosis of fibromyalgia, depression, and obesity.
5. Dr. Willis referred the plaintiff to Dr. Sanford Vernick, a chronic pain specialist, in Greenville, North Carolina. Dr. Vernick diagnosed the plaintiff with fibromyalgia in March, 1993. Dr. Vernick treated the plaintiff through March 24, 1993, at which time he felt that the plaintiff was no longer physically able to continue with her job at the defendant-employer.
6. The plaintiff had ceased working for the defendant-employer on February 25, 1993, due to the pain she was experiencing.
7. The plaintiff was referred to Dr. Michael Gwinn, a physical medicine and rehabilitation specialist, by the defendants on April 5, 1993. Dr. Gwinn diagnosed the plaintiff with fibromyalgia, degenerative disc disease, cervical spondylosis, and possible sub-clinical carpal tunnel syndrome. On April 20, 1993, Dr. Gwinn opined in a discussion with plaintiff's rehabilitation specialist that the plaintiff had reached maximum medical improvement as to her lumbar strain and assigned a 5% permanent partial impairment rating to the plaintiff's back.
8. On March 8, 1994, the plaintiff was referred by Dr. Willis to Dr. Charles Plotkin, an anesthesiologist, in Greenville, North Carolina. In May, 1994, Dr. Plotkin did a stellate ganglion block. He determined that the results confirmed the diagnosis of reflex sympathetic dystrophy.
9. In July, 1994, the plaintiff was referred by the defendants to Dr. Ralph Gertsch at Carolina Pain Consultants in Raleigh, North Carolina. He diagnosed the plaintiff with fibromyalgia.
10. In September, 1994, the plaintiff was referred by Dr. Willis to Dr. Cynthia Lopez, a neurologist, in Greenville, North Carolina. Dr. Lopez performed an autonomic sympathetic skin stimulation test, the results of which showed no signs of reflex sympathetic dystrophy. Greater weight is accorded to the diagnosis of Dr. Lopez. Plaintiff does not suffer from reflex sympathetic dystrophy.
11. In December, 1995, the plaintiff was referred by Dr. Willis to Dr. Douglas Finestone, a psychiatrist who specializes in the treatment of fibromyalgia.
12. Dr. Finestone testified at his deposition that the plaintiff had "severe and incapacitating" fibromyalgia. Dr. Finestone testified that plaintiff`s injury at work on August 14, 1992, was a significant contributing factor to the development of her fibromyalgia. Dr. Finestone testified that while the plaintiff had underlying fibromyalgia before the August 1992 work injury, her fibromyalgia became significantly worse after the work injury and caused her to be unable to work.
13. Dr. Finestone testified that the plaintiff's fibromyalgia was much more disabling than any reflex sympathetic dystrophy she may have because it is much more widespread and causes additional problems such as fatigue and sleep disturbance.
14. Further, Dr. Finestone testified that the plaintiff is permanently and totally disabled due to her fibromyalgia.
15. Dr. Willis also testified at his deposition that he considered the plaintiff currently totally disabled and unable to sustain gainful employment.
16. The plaintiff suffered an injury at work on August 14, 1992, which materially accelerated and aggravated her preexisting fibromyalgia. Plaintiff's fibromyalgia caused the plaintiff to become totally disabled.
17. Although the plaintiff is currently totally disabled due primarily to her work-related fibromyalgia, defendant has not had sufficient time to determine whether plaintiff has wage-earning capacity. Plaintiff's evaluation and treatment by Dr. Finestone began in December, 1995, which was after the hearing before the deputy commissioner, but while the record was still open for receipt of additional medical evidence. A determination that plaintiff is permanently and totally disabled would be premature at this time.
18. Since February 25, 1993, plaintiff has been temporarily totally disabled. Defendant has been making weekly payments of temporary total disability compensation to plaintiff pursuant to an I.C. Form 21 agreement approved by the Industrial Commission.
19. Plaintiff is in need of future medical care and treatment.
*******************
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of plaintiff's injury, plaintiff is temporarily totally disabled, and is entitled to weekly compensation beginning February 25, 1993, at the rate of $297.18 per week, until further Order of the Industrial Commission. The defendant is entitled to a credit for all weekly temporary total disability compensation previously paid to the plaintiff. N.C. Gen. Stat. § 97-29.
2. A material acceleration or aggravation of a preexisting condition is determined by a plaintiff's capacity or incapacity to work. Wilder v. Barbour Boat Works, 84 N.C. App. 188,352 S.E.2d 690 (1987). Prior to her injury at work on August 14, 1992, the plaintiff's fibromyalgia did not keep her from working. However, since February, 1993, plaintiff's fibromyalgia has incapacitated her from work.
3. Plaintiff is entitled to payment by the defendant for all of the reasonable and necessary medical expenses incurred or to be incurred in the future as a result of her compensable injury, including all reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services, for so long as such examinations, evaluations, and treatments tend to effect a cure, give relief, or lessen her disability. N.C. Gen. Stat. § 97-25.
*******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $297.18 per week, beginning February 25, 1993, through the date of hearing before the deputy commissioner and continuing until further Order of the Industrial Commission, subject to the attorney's fee approved in paragraph 3 below. The defendants shall receive credit for all payments of temporary total disability compensation previously made to the plaintiff.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable injury, including all reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services, for so long as such examinations, evaluations, and treatments tend to effect a cure, give relief or lessen her disability, when bills for same are submitted and approved through the procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of the future total disability benefits awarded plaintiff under paragraph 1 shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, including expert witness fees to Dr. Stephen E. Willis, Family Physician: $300.00; and Dr. Charles N. Plotkin, Anesthesiologist: $300.00.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ COY M. VANCE COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER